Jessie Ray BREWER, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8812–CR–1007.

Supreme Court of Indiana.

Nov. 8, 1990.

S. Sargent Visher, Choate, Visher & Haith, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Jessie Ray Brewer was convicted of one count of Child Molesting, a Class C felony, and one count of Child Molesting, a Class B felony, for which he was sentenced to five (5) and twenty (20) years, respectively. The trial court ordered the sentences to run concurrently for a total of twenty (20) years. He appeals directly to this Court and raises the following three issues:

1. whether there was sufficient evidence to support the convictions;

2. whether the trial court erred in admitting evidence of uncharged crimes under the depraved sexual instinct rule; and

3. whether the sentence imposed by the trial court was excessive.

The facts most favorable to the verdict show that the victim, L.D., lived with her grandmother at all times pertinent herein. She was ten (10) years old at the time of trial. L.D. shared a bedroom in her grandmother's house with her younger brother Gregory and two of her grandmother's children, Eric and Derek, twin boys who were approximately two (2) years younger than her. There were two bunk beds and a couch in this bedroom, which was located upstairs. The twins shared the top bunk bed, L.D.'s brother slept in the lower bunk bed and L.D. slept on the couch. Appellant

was the grandmother's live-in boyfriend. He had a daughter from a previous marriage who was fourteen (14) years old at the time of trial.

On a weekend in February of 1987, Appellant picked up his daughter and brought her to L.D.'s grandmother's house for an overnight visit. Appellant gave his daughter and L.D. permission to watch a movie on the VCR located in the bedroom he shared with L.D.'s grandmother. Appellant turned on the movie, which L.D. described as "nasty" with "naked people on it." Appellant pulled a cover over both of the girls. L.D. testified appellant tried to "feel" her and that he put his hand almost underneath her clothes where she put her belt at, her waist. Appellant's daughter testified that he touched L.D. on her "private parts." L.D. then got off the bed and onto the floor where she witnessed appellant undress himself and his daughter, who he then touched on her "private," between her legs. Appellant also asked his daughter to perform fellatio on him. She complied.

Sometime thereafter, while L.D. tried to sleep on a couch downstairs, appellant took her pants down and touched her "behind" with his hand and with his "private." L.D. testified this latter touching hurt her. Appellant told L.D. "it's our secret" and if she ever told anyone, he would hurt her grandmother.

A few months later, during her summer vacation after the second grade, there was a third incident which took place on a couch in the bedroom she shared with the other children in her grandmother's house. L.D. testified that while she was asleep and lying on her stomach, appellant pulled down her pants and "felt on her" with his hand. The other children who shared the bedroom were also present, but apparently asleep. Eric, who was seven (7) years old at the time, was in the bedroom and pretended to be asleep when this occurred. Eric testified at trial that appellant came into the room and turned out the light, went over to the couch, pulled down L.D.'s pants, got on top and then pulled down his own pants. He pulled his pants back up

and went to his room. Then he came back in a second time with his pants on and got on top of her again.

The very next day, Eric told L.D. that he had witnessed the entire episode. Eric then told his sister (L.D.'s mother) what had happened the night before. L.D.'s mother confronted appellant and immediately called the police.

I.

Appellant urges us to override the jury's guilty verdict in this case because the testimony was so incredibly dubious or inherently improbable that no reasonable person could believe it, citing *Shippen v. State* (1985), Ind., 477 N.E.2d 903. Appellant argues a consideration of the totality of the evidence establishes its dubiousness because: testimony came from a very young child as to what took place; there was a lapse in time as to when the crime was reported; there was a contradiction as to the source of the reporting whether it was the alleged victim or a younger member of the family; and there was a lack of specifics as to what exactly took place. We find that none of these factors, alone or in combination, establishes the testimony presented in the trial court below was so incredibly dubious or inherently improbable that no reasonable person could believe it.

First, regarding the testimony from a very young child, this Court has held the trial court's determination of a child's competency is presumed valid and will be reversed only for a manifest abuse of discretion. *Hodges v. State* (1988), Ind., 524 N.E.2d 774, 780. This is so because the trial court has the opportunity to observe the child's intelligence, demeanor and maturity. *Id.* There were three young children who testified at this trial: Eric, age eight (8), L.D., age ten (10), and appellant's daughter, age fourteen (14). Appellant does not specify which young child's testimony he is challenging, nor does he indicate the grounds upon which he is challenging the testimony, other than it came from a young child. Each child demonstrated he or she knew the difference between telling the truth and telling a lie, and

each promised to tell the truth. Appellant has failed to demonstrate the trial court abused its discretion in finding these children were competent to testify at trial.

■ Next, appellant argues the evidence, taken as a whole, was dubious because there was a lapse in time as to when the crime was reported and there was a contradiction as to the source of the reporting. It was unclear, appellant argues, whether the crimes were reported by the alleged victim or a younger member of the family. The fact that there was a lapse of time in reporting these acts of molestation comes as no surprise to this Court, especially when we consider the appellant, who lived in the same house as the victim, told her "it's our secret" and threatened to hurt her grandmother if she ever told anyone about what had happened. Indeed, it is clear from the evidence presented that L.D. was truly a captive in her own home. The first person L.D. was able to confide in was a cousin who lived outside the home. This cousin testified at trial that L.D. had been wanting to spend time at her house for awhile. Finally, during summer vacation, L.D. visited her cousin for a week and told her there was a time when appellant had approached her and, although she really did not know what he had done, she knew he had done something to her. The cousin, who did not want to get involved, told L.D. she had to tell somebody about it, at least her grandmother or great grandmother. The first family member, other than L.D. herself, to take any substantial steps to protect L.D. was Eric, then seven (7) years old, who told L.D.'s mother the very next day what he had witnessed in the bedroom he shared with L.D. It was L.D.'s mother who then confronted appellant and immediately reported the crime to the police. There simply was no lapse of time between this last instance of molestation and reporting it to the police. Moreover, despite appellant's protestations to the contrary, there is no contradiction in the record as to the source of the reporting. Both L.D. and Eric reported to a family member what was happening; L.D.'s mother was, apparently, the only one with the courage to confront appellant and immediately summon the police. Given the nature of these crimes, this course of events is not inherently improbable, nor was the testimony presented incredibly dubious. Accordingly, we will not impinge upon the jury's responsibility in evaluating the credibility of these witnesses. *Stewart v. State* (1990), Ind., 555 N.E.2d 121, 125–26 n. 3 (citing *Bedwell v. State* (1985), Ind., 481 N.E.2d 1090, 1092).

Finally, appellant contends, the evidence presented was not specific enough as to exactly what took place. We do not agree. L.D. was under twelve (12) years of age when these events took place. L.D. made it clear in her own words that appellant had touched her while in bed with his daughter as he watched a pornographic film. This touching or fondling was clearly done with the intent to arouse or to satisfy his sexual desires, and constituted child molesting, a class C felony. IC 35–42–4–3(b). L.D. related the second instance in her own words which demonstrated appellant committed an act involving his sex organ and the victim's anus. This constituted class B child molesting. IC 35–42–4–3(a). These acts took place in the victim's own home, as charged in the information, on or about the month of February, 1987. This Court has approved a lack of specificity as to time in cases of this nature where instances of child molestation have extended over a period of years. *See, e.g., Hodges*, 524 N.E.2d at 779 (information charging child molestation occurred from August 1982 to September 1984 held to have stated the offenses with sufficient certainty, as required by IC 35–34–1–2(a)(5) and (6)). We find the evidence in this case was sufficiently specific both as to the acts themselves and the time frame in which the acts were committed.

In reviewing a challenge to the sufficiency of the evidence we neither reweigh the evidence nor judge credibility. We examine only the circumstantial and direct evidence most favorable to the State together with all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion the defendant is guilty beyond a reasonable doubt, the verdict will not be set

aside on appeal. *Thomas v. State* (1988), Ind., 519 N.E.2d 143, 144–45. The victim testified that appellant had molested her on three different occasions, and her testimony was corroborated by eyewitnesses to two of the three episodes. Appellant took the witness stand in his own defense and denied that any of this happened. Appellant testified he had argued with L.D.'s mother in the past when she accused him of fondling her at night. He suggested that L.D. must have made up her story because she had witnessed these arguments where her mother accused him of making advances towards her. It was the jury's duty to consider appellant's explanation and weigh it against the corroborated testimony of the victim.

We find there was sufficient probative evidence to support appellant's child molesting convictions beyond a reasonable doubt.

## II.

Next, appellant argues, the State was improperly allowed to introduce evidence of uncharged crimes, namely, appellant's molestation of his daughter. Appellant argues this evidence prejudiced him and was erroneously allowed, over his objection, even though appellant's daughter had given contradictory statements about what happened. In fact, appellant asserts, his daughter initially denied that the events had taken place as they were described to her by a police officer when she was first questioned about this matter. The latter two objections appellant raises go to the weight and not the admissibility of the evidence. If appellant's daughter had given prior inconsistent statements, they could have been used to impeach her credibility on cross-examination. The credibility of appellant's own daughter who testified against him was a question within the province of the jury, which we will not invade. *Thomas, supra.*

Whether the prejudicial impact of evidence of uncharged crimes outweighs its probative value, however, is a question of admissibility for the trial court to decide. The trial court has inherent discretionary power on questions of admission of evidence, and its decisions are reviewed only for an abuse of that discretion. *Oglesby v. State* (1987), 515 N.E.2d 1082, 1085. Appellant objected to the introduction of this evidence in a motion *in limine* prior to trial. The State correctly pointed out this evidence was an exception to the general rule against admitting evidence of prior bad acts since it was probative to show a depraved sexual instinct on the part of the appellant. The trial court granted appellant's motion *in limine,* except as to evidence to be presented by the State from L.D. and the appellant's daughter herself. The trial court further ruled that if any other testimony came about on the part of the State, it would have to request a hearing before presenting that evidence.

The trial court did not abuse its discretion in admitting evidence of appellant's molestation of his own daughter. Acts used to show a depraved sexual instinct need not be identical to the crime for which a defendant is charged. It is sufficient if the same sexual instinct is involved. *Hodges,* 524 N.E.2d at 781; *Jarrett v. State* (1984), Ind., 465 N.E.2d 1097, 1100. In *Hodges, supra,* this Court held:

> Here, the previous acts of Hodges were similar enough to the charged crimes to merit introduction under the depraved sexual instinct rule. Both involved a minor as a victim and were similar in time and proximity. There was no error in the introduction of this evidence.

*Hodges,* 524 N.E.2d at 781. In the instant case, appellant took L.D. and his own daughter to bed at the same time. Clearly, the molestation of his daughter, although not charged, was nearly simultaneous with his molestation of L.D. This evidence of appellant's depraved sexual instinct was properly admitted by the trial court.

Appellant presents no error on this issue.

## III.

Finally, appellant contends the sentence imposed by the trial court was excessive. Appellant, citing *Frappier v. State* (1983), Ind., 448 N.E.2d 1188, argues the trial court cannot simply rely upon aggra-

vating circumstances without taking into consideration the mitigating circumstances presented. However, appellant fails to set forth in his brief those mitigating circumstances he thinks the trial court should have considered. Instead, he contends the trial court's statement prior to sentencing indicates she did not consider anything in mitigation. This is simply not true. Appellant argued certain mitigating factors prior to sentencing, including his hope that L.D. only suffered very little physical and emotional damage as a result of his actions; his lack of understanding and appreciation of some of his acts; his fifth grade education and illiteracy; his prior hospitalization for a mental deficiency; and the family's failure to report his actions more promptly. Many of these mitigating factors were also set forth in the pre-sentence investigation report, which the trial court read before she imposed sentence.

In *Frappier, supra,* this Court upheld the sentence imposed by the trial court and noted IC 35–4.1–4–3 (now codified at IC 35–38–1–3) requires the trial court to make a record of the sentencing hearing and to make "a statement of the court's reasons for selecting the sentence it imposes." *Frappier,* 448 N.E.2d at 1189. In addition, if the statement supporting enhancement of the standard sentence is insufficient, the case will be remanded for a more specific statement or the imposition of the standard sentence. *Id.* The trial court's statement supporting enhancement was certainly sufficient here. In aggravation, the trial court found appellant was in a position of trust with the child and the molesting occurred more than one time. The evidence presented supports these findings. We will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and character of the offender. A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for whom such sentence is imposed. *Coleman v. State* (1986), Ind., 490 N.E.2d 711, 715; Ind.Appellate Rule 17(B). Given the facts of this case, including the nature of the crimes and the character of the offender, we cannot say the sentences imposed were manifestly unreasonable.

The trial court is affirmed.

SHEPARD, C.J., and GIVAN, J., concur.

DeBRULER, J., concurs and dissents with opinion in which DICKSON, J., concurs.

DeBRULER, Justice, concurring and dissenting.

The standard sentence for sexual deviate conduct with a child under twelve is ten years. I.C. 35–42–4–3. Appellant received the maximum sentence for that offense, namely, twenty years. In stating the reasons for this maximum enhancement, the trial court noted that the pre-sentence report had been read, the evidence heard, and the maximum aggravation chosen because "[t]he Defendant was in a position of trust with the child, and the molesting occurred more than one time." The trial court made no statement concerning the manner in which mitigating factors were evaluated. Because of the paucity of this statement as a justification for making no outward evaluation of the evidence offered in mitigation of punishment and choosing the maximum sentence and because this same statutory offense includes more heinous and violent sexual attacks upon children under twelve, such as those involving the use of force or imminent threat of force, terror, bodily injury, and severe mental trauma, absent here, I would remand this case to the trial court to enter new findings supporting the maximum sentence or, in the alternative, reduce the sentence to the basic term of ten years. *Page v. State* (1980), 274 Ind. 264, 410 N.E.2d 1304.

DICKSON, J., concurs.