Brian E. JONES, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 42S00–0103–CR–00154.

Supreme Court of Indiana.

Dec. 20, 2002.

Susan K. Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

DICKSON, Justice.

The defendant, Brian Jones, was convicted of the September 1997 rape and murder of Brook Baker, a nineteen-year-old student at Vincennes University. The trial court, following the jury's recommendation, sentenced the defendant to life imprisonment without parole. In this appeal, the defendant seeks relief on claims of insufficient evidence, erroneous exclusion of the victim's statement of fear of her landlord, erroneous admission of a detective's testimony regarding a movie scene, and errors in sentencing. We affirm the trial court.

### Sufficiency of Evidence

The defendant contends that the evidence is insufficient to sustain his convictions. In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the judgment, and neither reweighing the evidence nor judging the credibility of the witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proved beyond a reasonable doubt. *Winn v. State*, 748 N.E.2d 352, 357 (Ind. 2001).

The evidence and reasonable inferences favorable to the judgment are as follows. The victim, Brook Baker, was continuously with other persons from approximately 3:30 P.M. on Saturday, September 6, 1997, until shortly after 1:30 A.M. Sunday morning, September 7. Her lifeless nude body with multiple stab wounds was found on the mattress in the bedroom of her rented home by her younger brother at 8:15 P.M. Sunday evening. A pathologist found that she was likely strangled, but ultimately died from loss of blood after suffering a stab wound to her left breast and eleven stab wounds to her back. Bruising on her wrists, hand, legs, pelvis, and the back sides of her elbows were consistent with a person being physically restrained against her resistance. Police found a knife in soapy water in her kitchen sink, and an analysis of the human tissue attached to the knife revealed that she was a possible contributor to the DNA in the tissue. The defendant had visited Brook Baker's house with friends about three months before her death. He had also had contact with her

on at least one other subsequent occasion. On the night of the murder, the defendant was at a party with fraternity brothers at a house two blocks away from the victim's house until about 2:00 A.M., and his friends could not specifically recall whether the defendant returned to their house with them or not. The defendant was seen the day after the murder with a scratch on his face. When initially interviewed by police, the defendant denied ever having sex with Brook Baker, but DNA from semen recovered from vaginal swabs, from the sheet on her mattress, and from under her fingernails was consistent with the defendant's DNA. The defendant had recently rented the movie "Curdled," that depicted a homicide in which a man stabbed a victim numerous times in the back and then cleaned the knife in the victim's kitchen sink.

Acknowledging that the evidence proves that he had intercourse with Brook Baker, the defendant contends that it fails to establish that the intercourse occurred at the time of the murder, that it was compelled by force, or that he was the murderer. He argues that the evidence establishes only suspicion and possibilities, not proof beyond a reasonable doubt. The State responds that the convictions for murder and rape are supported by the circumstantial evidence and resulting reasonable inferences, emphasizing the defendant's DNA on Brook's fingernails and in her vagina, the scratch on the defendant's face the next day, and the similarity of the facts to a scene in a movie the defendant had rented shortly before the murder.

■ Circumstantial evidence alone may be sufficient to support a conviction. *Hubbard v. State*, 749 N.E.2d 1156, 1158 (Ind. 2001). Beyond the evidence the State highlights, we further note evidence that the victim's lifeless body was found nude with multiple stab wounds on her back and chest, that the defendant was acquainted with the victim, that he had visited her home, that he was near her home at the probable time of her death, and that the defendant initially lied to investigating police. We conclude that, from the evidence presented at trial, a reasonable jury could find beyond a reasonable doubt that the defendant committed the charged rape and murder.

## Exclusion of Victim Statement

The defendant contends that the trial court erroneously excluded a statement made by the victim shortly before she was killed. The night before the victim's body was found in her apartment, a friend had walked her home. As they were walking, the victim's landlord drove by. Upon seeing her landlord, the victim remarked to her friend that he was her landlord and that she was afraid of him. The trial court granted the State's motion in limine regarding this evidence. Shortly before the friend testified, the defendant again raised the issue, and the trial court affirmed its earlier ruling. At trial and on appeal, the defendant asserts that this evidence is admissible because it meets the present sense impression exception to the hearsay rule, Indiana Evidence Rule 803(1).

■ The trial court has inherent discretionary power on the admission of evidence, and its decisions are reviewed only for an abuse of that discretion. *Rubalcada v. State*, 731 N.E.2d 1015, 1023 (Ind. 2000); *Brewer v. State*, 562 N.E.2d 22, 25 (Ind.1990). Rule 803(1) describes a present sense impression as, "A statement *describing or explaining* a material event, condition, or transaction, made while the declarant was perceiving the event, condition or transaction, or immediately thereafter." (Emphasis added). This rule requires the statement to describe or explain the event or condition during or immedi-

ately after its occurrence, and it must be based on the declarant's perception.

■ There are two hearsay assertions at issue. The victim's first assertion, which identified the person driving by as her landlord, satisfies the exception. The victim, based on her perception, was contemporaneously describing the person driving by. It was error to exclude this statement. However, errors in the admission of evidence are harmless unless the error affects the substantial rights of the parties. Ind. Trial Rule 61. The victim's landlord himself testified that he was her landlord. This evidence was merely cumulative. The exclusion of this assertion was harmless error.

■ The victim's second assertion, in which she expressed her fear of her landlord, does not satisfy the exception. This assertion does not describe an event contemporaneously perceived. The fact that the victim feared her landlord does not describe or explain an event, condition, or transaction that the declarant was perceiving as she spoke. The trial court did not err in excluding the second statement.[1]

## Admission of Detective's Movie Scene Description

■ The defendant contends that the trial court erred in allowing a detective to testify about a scene in the movie "Curdled," a video that the defendant rented one week before the murder. He argues that the trial court violated Indiana Evidence Rule 1002 in allowing the detective to testify regarding the movie scene rather than showing it to the jury.

The challenged testimony occurred when the trial court permitted the State to present rebuttal evidence which included the testimony of both Detective Greg Winkler and the owner of a local video rental business. Prior to its ruling, the court heard argument of counsel. The State there contended that during voir dire, opening statement, cross examination, and its case in chief, the defense had raised the issue of identity. The State argued to the trial court that "the defense is saying my guy is too young, too unsophisticated to be able to do this and so ergo somebody else must have done it." Record at 2019. Further asserting that the question of identity is "the centerpiece" of their defense, the State sought to introduce evidence that one week before the murder, the defendant rented a video of the movie "Curdled" that depicts a woman being repeatedly stabbed in the back in her kitchen with a knife which the killer then cleans in the kitchen sink "just eerily similar to the case that we have here today." Record at 2023, 2025. The defense objected, asserting Indiana Evidence Rules 403 and 404(b). Finding that the proposed video rental evidence was relevant and not unfairly prejudicial, the trial court granted the State's request in part, indicating that it would "at least admit some evidence relating to this video tape." Record at 2034.

Now to be honest with you, Mr. [deputy prosecutor], I'm not interested in going blow by blow ... through the plot scene by scene. I'm not sure it's particularly relevant who the stars were, whether they were good looking, but I think evidence of the rental can be introduced and some indication as to a particular

---

1. While this statement may arguably have qualified under the then-existing mental, emotional, or physical condition exception of Indiana Evidence Rule 803(3), its admissibility also required that it be material, which the trial court found it was not. We decline to find any abuse of discretion in this ruling. And even if the court erred in excluding it, the marginal relevance of the evidence coupled with the relatively strong evidence of the defendant's guilt would have rendered any such error harmless.

scene in the movie and what it depicted is relevant so if you could figure out a way to do this without making this a three or four hour ordeal I would certainly appreciate it.

*Id.* The court thereafter added: "As to the showing of the movie I would find that to be unfairly prejudicial. I would not be agreeable to that. I think that could be very prejudicial to the defendant. I have no inclination to allow you to do that." *Id.*

The State then presented the testimony of the owner of a video rental business who stated that, according to her business records, a video entitled "Curdled" was rented on August 29, 1997, under the account name of Brian Jones, and returned September 29, 1997. Detective Winkler next testified, stating that during his investigation of the crime he had seen a large poster for the movie "Curdled" in the living room of the victim's home. Upon learning that the defendant had rented the movie shortly before the murder, the detective then rented the movie and watched it. His testimony regarding the homicide scene consisted of the following: "The homicide involved a female as the victim. She was stabbed numerous times in the back in the kitchen and the suspect in this mystery then went to the sink in the kitchen and cleaned the knife off and washed his hands." Record at 2061–62. In response to further questioning, the detective stated that the perpetrator obtained the knife from the kitchen. When asked on cross examination whether the victim had sex with the perpetrator, the detective answered, "Not that I remember." Record at 2062.

In the present case, Brook Baker was stabbed multiple times in the back, and her kitchen sink was found to contain a

knife with human tissue on the tip soaking in soapy water.

■■■ The defendant argues that allowing the detective to describe the scene in the movie rather than showing the movie violated Indiana Evidence Rule 1002. Known as the "best evidence rule," Rule 1002 states: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute."[2] *Id.* The defendant did not, however, challenge the accuracy of the detective's description of the movie scene at trial nor does he challenge it on appeal. To be entitled to reversal for the improper use of secondary evidence, "[a]n effective objection must identify an actual dispute over the accuracy of the secondary evidence." *Lopez v. State*, 527 N.E.2d 1119, 1125 (Ind.1988). Because there is no dispute as to the accuracy of the description, any error in admitting the description in lieu of the actual movie was harmless.

### Sentencing

The defendant contends that the trial court's sentencing is deficient in several particulars: (1) the sentencing statement fails to state that one or both of the aggravating circumstances were proved beyond a reasonable doubt, (2) the trial court considered impermissible aggravating circumstances, and (3) the court used an improper aggravating circumstance to impose an enhanced sentence for the defendant's rape conviction.

■■■ The State acknowledges that in considering whether to follow the jury's recommendation, the trial court here erroneously considered the general aggrava-

---

2. Although this Rule was not specifically cited by the defense at trial, it was sufficiently raised by the defense's trial objection that "If they want to get evidence of the movie in then they should play the entire movie." Record at 2041.

ting factors set forth in Indiana Code § 35–38–1–7.1(b) rather than just those permitted in Indiana Code § 35–50–2–9(b). We agree that the judgment of the trial court is defective as to the sentence of life without parole.

 Upon finding a substantial irregularity in a trial court's decision to impose the death penalty or life without parole, we have various options. Among these are: 1) remand to the trial court for a clarification or new sentencing determination, 2) affirm the sentence based upon a finding of harmless error, or 3) independently reweigh the proper aggravating and mitigating circumstances at the appellate level. *Long v. State,* 743 N.E.2d 253, 261 (Ind.2001); *Lambert v. State,* 675 N.E.2d 1060, 1065 (Ind.1996); *Bivins v. State,* 642 N.E.2d 928, 957 (Ind.1994). This Court has the constitutional authority to review and revise criminal sentences. IND. CONST. art. VII, § 4. We choose here to employ the third option and independently reweigh the proper aggravating circumstances. We recognize, however, that our authority to independently reweigh and resentence is limited by the requirement that where the penalty for a murder conviction is increased beyond the statutory maximum term of years to a sentence of death or life without parole, the facts qualifying a defendant for the enhanced penalty must be submitted to a jury and proved beyond a reasonable doubt. *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 2443, 153 L.Ed.2d 556 (2002). In the present case, the State sought a sentence of life without parole. The jury was instructed that the State alleged the existence of at least one of two statutory aggravating circumstances: that the defendant intentionally killed Brook Baker while committing the crime of rape,[3] and that the defendant

has been convicted of another murder.[4] Appellant's App. p. 761. The penalty phase jury found that the State had proved beyond a reasonable doubt the existence of at least one aggravating circumstance, and it recommended imposition of a sentence of life without parole. The jury determinations required by *Ring* were thus made in this case.

 We find that the charged aggravating circumstances have been proved beyond a reasonable doubt. The defendant's semen was found in the victim's vagina and on her bed sheet, the victim's injuries demonstrate she was restrained, and the defendant's DNA was found in clippings from the victim's fingernails. She was still naked in bed when her lifeless body was discovered. The evidence establishes beyond a reasonable doubt that the murder was committed while committing the crime of rape. As to the second aggravating circumstance, on August 8, 2000 the defendant pleaded guilty to murdering Erika Norman. The fact that the defendant had previously been convicted of another murder is likewise established beyond a reasonable doubt.

During the penalty phase, the defense presented mitigating evidence seeking to establish that the defendant was twenty-four years old, had never displayed any violent tendencies, had graduated from high school, and had attended college for two years. The defense did not dispute the defendant's prior murder conviction but urged that, other than this, the defendant had "virtually no criminal history." Record at 2180. At the trial sentencing proceedings, the defense urged that mitigating consideration be given to the facts that he was only twenty-four years old, had completed two years of college, and

---

**3.** Ind.Code § 35–50–2–9(b)(1)(F) (Supp.1997).

**4.** Ind.Code § 35–50–2–9(b)(7) (Supp.1997).

had a good employment history. The trial court found no mitigating factors.

We find that the defendant's age, education, and employment history are collectively entitled only to slight weight. In contrast to the very significant weight we accord the two aggravating circumstances found in this case, we conclude the aggravating circumstances clearly outweigh the mitigating circumstances. We are also cognizant of the jury's unanimous recommendation favoring a sentence of life without parole. We find that a sentence of life without parole is the appropriate penalty for this defendant for his murder of Brook Baker.

 As to the defendant's sentence for class B felony rape, he correctly notes that the trial court erroneously considered the "depreciate the seriousness of the crime" aggravator. Ind.Code § 35–38–1–7.1(b)(4) (Supp.1997). This circumstance is only to be considered when the court contemplates imposing a sentence that is less than the presumptive sentence, which was not the case here. The court also found the defendant's criminal history (specifically the other murder conviction) and the brutal nature of the crime to be aggravating circumstances. The trial court found no mitigating circumstances. For the rape conviction, the trial court imposed an aggravated sentence of twenty years concurrent to the life sentence and consecutive to the sentence imposed in the defendant's other murder case. When a trial court improperly applies one aggravator, but other valid aggravators exist, the court's sentence enhancement may still be upheld. *Price v. State,* 725 N.E.2d 82, 85 (Ind.2000). In light of the nature and severity of the remaining aggravating circumstances, we decline to reverse the trial court's enhanced sentence for rape.

## Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.