## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 15 2017, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marc Benton, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 15, 2017 <br><br> Court of Appeals Case No. 49A02-1606-CR-1475 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Helen W. Marchal, Judge <br><br> Trial Court Cause No. 49G15-1505-F6-17046 |

**Mathias, Judge.**

[1] Following a jury trial in Marion Superior Court, Marc Benton ("Benton") was convicted of Level 6 felony pointing a firearm and sentenced to 365 days with

339 days suspended to probation. On appeal, Benton claims that the trial court committed reversible error in the admission of certain testimony that Benton claims was inadmissible hearsay. Concluding that the statements at issue fall within one of the exceptions to the hearsay rule and were cumulative of other testimony and therefore harmless, we affirm.

## Facts and Procedural History

Benton and Andre Murdock ("Murdock") were former friends. On May 14, 2015, Murdock was driving on German Church Road in Indianapolis when he saw Benton driving toward him in the opposite direction. Benton and Murdock made eye contact as they passed each other. Benton then made a U-turn and began to follow Murdock, who made a right turn on 10th Street because he was afraid to stop the car with Benton following him. Benton pulled his car next to Murdock's and began to yell at him. Benton then called Murdock a "bitch" and threatened to shoot him, pointing both a handgun and a long gun at Murdock. Tr. p. 29.

Murdock made attempts to evade Benton and made several turns onto various streets. Still, Benton followed him, "aiming the guns and yelling." Tr. p. 35. Frightened, Murdock telephoned his mother, Cathleen. Murdock's voice was quivering, and Cathleen described her son as sounding "panicked." Tr. p. 46. Murdock told his mother that Benton was "driving beside him and had a gun pointed at him and was telling him to pull over and or either or or [sic] and he was was [sic] going to shoot him." *Id.* at 47. Concerned for her son's life and worried that Benton would follow Murdock to her home, Cathleen told

Murdock to drive to the police station for help. Cathleen told Murdock to call the police then called the police herself. Murdock, still driving, yelled back at Benton to leave him alone and implored him to go home, to no avail. Eventually, Murdock called 911 himself and reported Benton's behavior. Murdock arrived at his mother's home, where he lived, and ran inside and locked the doors. Benton remained outside the home.

[4] In the meantime, officers from the Indianapolis Metropolitan Police Department ("IMPD") were dispatched to the Murdock home on a report that Murdock was being followed by a man named "Marc" who had pointed a gun at him. Tr. p. 71. The police arrived approximately five to ten minutes after Murdock and Benton arrived at the Murdock home. Officer Roman Williams-Ervin ("Officer Williams-Ervin") spoke with Murdock, who was still "angry" and "upset." Tr. p. 75. Murdock told Officer Williams-Ervin that Benton had pointed guns at him. Officer Williams-Ervin asked Murdock what type of guns Benton pointed at him, and Murdock responded that Benton had pointed a Glock pistol with an extended magazine and a "rifle-type weapon" that was larger than the pistol. Tr. p. 77.

[5] IMPD Officer Stacy Riojas ("Officer Riojas") questioned Benton after reading him his Miranda rights. Although initially agitated, Benton seemed uninterested and dismissive of the police questioning. Benton admitted to Officer Williams-Ervin that he had guns in his car and stated that Murdock had not been over to his car since he parked and thus would not have seen the guns inside the car. Officer Williams-Ervin looked at Benton's car and could see on

the passenger seat a Glock handgun with an extended magazine and a short-barreled rifle. Officer Williams-Ervin secured the weapons in his vehicle and ultimately arrested Benton for pointing a firearm.

[6]     On May 18, 2015, the State charged Benton with Level 6 felony pointing a firearm. A jury trial was held on May 25, 2016. At the trial, Benton objected to Cathleen's testimony regarding what Murdock had told her during their telephone conversation. The trial court overruled this objection. Benton also objected to testimony by Officer Williams-Ervin regarding what Murdock told him about his encounter with Benton. The trial court overruled this objection, and Officer Williams-Ervin related to the jury his conversation with Murdock. Murdock also testified about his encounter with Benton and stated unequivocally that he saw Benton, whom he knew well, point guns at him while Benton chased Murdock in his car. The jury found Benton guilty as charged.

[7]     At a hearing held on June 21, 2106, the State sentenced Benton to 365 days, all suspended to probation, with credit for time served awaiting trial. With this credit, Benton's sentence was 339 days, suspended to probation on GPS monitoring. The trial court also stated that it would reconsider the GPS monitoring after 180 days and informed Benton of the possibility of alternate misdemeanor sentencing. Benton now appeals.

## Standard of Review

[8] Benton argues that the trial court erred in the admission of testimony he claims was inadmissible hearsay.[1] In considering Benton's argument, we note that decisions regarding the admission of evidence are left to the sound discretion of the trial court, and we review the court's decision only for an abuse of that discretion. *Boatner v. State*, 934 N.E.2d 184, 186 (Ind. Ct. App. 2010). The trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id*.

## The Hearsay Rule

[9] Hearsay is defined by Indiana Evidence Rule 801(c) as a statement that is not made by the declarant while testifying at trial or hearing and which is offered into evidence to prove the truth of the matter asserted in the statement. As a general rule, hearsay evidence is inadmissible. *Boatner*, 934 N.E.2d at 186. (citing Ind. Evidence Rule 802). However, exceptions to the hearsay rule permit the admission of otherwise inadmissible evidence,

[10] One exception to the hearsay rule is the "excited utterance" exception contained in Evidence Rule 803(2). This rule provides that "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" is not excluded by the hearsay rule,

---

[1] Benton makes no claim on appeal that the admission of the statements violated his rights under the Confrontation Clause of the Sixth Amendment.

"regardless of whether the declarant is available as a witness." Ind. Evidence Rule 803(2).

[11] Another exception to the hearsay rule, the present sense impression exception, is contained in Evidence Rule 803(1), which provides that "[a] statement describing or explaining an event, condition or transaction, made while or immediately after the declarant perceived it" is also not hearsay. In order for a hearsay statement to be admitted as an excited utterance, three elements must be present: (1) a startling event has occurred; (2) a statement was made by a declarant while under the stress of excitement caused by the event; and (3) the statement relates to the event. *Boatner*, 934 N.E.2d at 186. The admissibility of an allegedly excited utterance turns on whether the statement was inherently reliable because the witness was under the stress of the event and unlikely to make deliberate falsifications. *Id*. Thus, the heart of the inquiry is whether the declarant was incapable of thoughtful reflection. *Id*. Although the amount of time that has passed is not dispositive, a statement that is made long after the startling event is usually less likely to be an excited utterance. *Id*.

## Discussion and Decision

[12] At the outset, we agree with Benton that Murdock's statements to his mother and the officer, as related by these witnesses during their testimony at trial, was, by definition, hearsay. That is, the statements were made by the declarant, Murdock, when he was not testifying at trial or a hearing, and the statements were offered into evidence to prove the truth of what Murdock stated: that

Benton had chased him in his car and pointed guns at him while threatening to shoot him.

### *A. Murdock's Statements to His Mother*

With regard to Murdock's statement to his mother, that statement appears to fit within either of the above-mentioned exceptions to the hearsay rule. First, it was a present sense impression in that it described an event (being chased and threatened by Benton), and it was made while Murdock perceived the event. *See Jones v. State*, 780 N.E.2d 373, 377 (Ind. 2002) (holding that murder victim's statement to her friend while they were walking near her apartment on night before her murder that the person who just drove by was her landlord was a contemporaneous description of the person driving by and was thus admissible under the present-sense impression exception to the hearsay rule).

Second, Murdock's statement to his mother was also an excited utterance in that it related to a startling event (being chased and threatened by Benton) and was made while Murdock was under the stress of excitement caused by the event. Indeed, Murdock's mother Cathleen testified that, during her telephone conversation with her son, he seemed "panicked" and his voice was trembling under the stress of the event. Tr. p. 46. *Boatner*, 934 N.E.2d at 187 (holding that domestic violence victim's statement to officer that defendant had pushed her down and hit her was admissible under the excited utterance exception where the declarant was disoriented, crying, without shoes, and almost ran into the officer in her attempt to find help). Because Murdock's statement to his mother

fell within two exceptions to the hearsay rule, the trial court did not abuse its discretion in admitting Cathleen's testimony regarding Murdock's statement.

### B. Murdock's Statement to the Police

[15] We reach a similar conclusion with regard to Murdock's statement to the police. Officer Williams-Ervin testified that, when he spoke with Murdock, Murdock was still "angry" and "upset" about the incident with Benton. He further testified that both Murdock and Benton were "agitated," "heated," and seemed to have been in an argument. Tr. pp. 72-73. Moreover, only a few minutes had passed since Benton had chased Murdock home. *See* Tr. p. 33 (Murdock explaining that it took "not even" ten to fifteen minutes for the police to arrive); Tr. p. 60 (Cathleen explaining that it took the police "maybe five minutes" to arrive to her house). Thus, Murdock's statement to Officer Williams-Ervin was made after a startling event had occurred (being chased by a gun-wielding Benton), the statement was made while Murdock was still under the stress of excitement caused by the event, and the statement related to the event. Further, little time had passed since the event. Accordingly, we hold that the trial court properly admitted the statement under the excited utterance exception to the hearsay rule. *See Fowler v. State*, 829 N.E.2d 459, 463-64 (Ind. 2005) (holding that domestic violence victim's statement to police implicating her husband was admissible under the excited utterance exception where about fifteen minutes had elapsed between the police being dispatched and the wife's statement, and wife was still crying, bleeding from the nose, and having trouble

catching her breath when she made the statement);[2] *Boatner*, 934 N.E.2d at 187 (holding that domestic violence victim's statement to officer that defendant had pushed her down and hit her was admissible under the excited utterance exception where the declarant was disoriented, crying, without shoes, and almost ran into the officer in her attempt to find help); *Gordon v. State*, 743 N.E.2d 376, 378 (Ind. Ct. App. 2001) (domestic violence victim's statement to the police that her boyfriend, the defendant, hit her were admissible under the excited utterance exception where victim spoke to the police only five minutes after she placed 911 emergency call and she was still visibly distressed as a result of the domestic battery).

[16] Lastly, assuming *arguendo* that the trial court abused its discretion in admitting these statements, they were merely cumulative of other evidence admitted without objection at trial, including the tapes of the 911 calls placed by Murdock and his mother and, more importantly, Murdock's own unequivocal testimony at trial that Benton chased him down and pointed guns at him. If evidence which is alleged to have been improperly admitted is cumulative of other evidence, the admission is harmless error. *Harrison v. State*, 32 N.E.3d 240, 254 (Ind. Ct. App. 2015), *trans. denied*. Accordingly, even if the Murdock's hearsay statements were inadmissible (and they were not), any error would be

---

[2] As this court first recognized in *Roberts v. State*, 894 N.E.2d 1018, 1024-25 (Ind. Ct. App. 2008), *Fowler* was abrogated in part by *Giles v. California*, 554 U.S. 353 (2008), with regard to its broad interpretation of the doctrine of "forfeiture by wrongdoing" as applied to the Confrontation Clause of the Sixth Amendment. However, *Fowler* is still good law for purposes of the hearsay rule. *See Young v. State*, 980 N.E.2d 412, 421 (Ind. Ct. App. 2012) (relying on *Fowler* with regard to its holding on the excited utterance exception).

harmless. *See Jones*, 780 N.E.2d at 377 (holding that exclusion of murder victim's statement to her friend that the person who just drove by was her landlord was improper but harmless because the statement was merely cumulative of the landlord's testimony that he was).

## Conclusion

[17] Murdock's statements to his mother and to the police were hearsay, but they fall within exceptions to the hearsay rule. Accordingly, the trial court did not abuse its discretion in admitting the statements, and we affirm the judgment of the trial court.

[18] Affirmed.

Baker, J., and Pyle, J., concur.