Shannon **FRYE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0507–CR–669.

Court of Appeals of Indiana.

July 18, 2006.

Transfer Denied Sept. 19, 2006.

Hilary Bowe Ricks, Indianapolis, for Appellant.

Stephen R. Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

ROBERTSON, Senior Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Shannon Frye ("Frye") is appealing his conviction after a jury trial of the Class B felony of confinement, the Class C felony of intimidation, the Class D felony of pointing a firearm, the Class D felony of criminal recklessness, and the Class A misdemeanor of carrying a handgun without a license. Additionally, Frye was found guilty, after waiving a jury trial, of the Class B felony of unlawful possession of a firearm by a serious violent felon, and another count of the Class A misdemeanor of carrying a handgun without a license. Frye was sentenced to 26 years.

We affirm.

### ISSUES

Frye states the issues as:

1. Whether the Court erred in admitting testimonial hearsay as an excited utterance, in violation of the Sixth and Fourteenth Amendments of the United State Constitution and Article One, Section Thirteen of the Indiana Constitution.

2. Whether the Court [erred] in admitting prior bad acts evidence as material to the alleged state of mind.

3. Whether the Court erred in considering aggravating factors for which notice had not been provided to the Defendant by the State, in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article One, Section Thirteen of the Indiana Constitution.

### FACTS

Timothy Royal ("Royal") and Ashley Chastain ("Chastain") attended the funeral of Royal's nephew. Royal and Chastain had never dated nor were they sexually involved. Chastain was dating Frye at the time. Royal took Chastain back to her car and then returned home by himself. Royal laid down on his couch without turning the lights on. Sometime later Royal felt someone tapping him on his leg. Royal saw the outline of a man and thought it was his roommate. Royal tried to go back to sleep, but was struck across his leg. The man said "I am Shannon, Ashley's man." Frye testified at trial that Chastain had driven him to Royal's house, and that she had run through the house and out the back door. Chastain was not present during this part of the episode. The back door was open. Frye accused Royal of sleeping with Chastain; however, Royal denied it. Royal tried to stand up, but Frye said, "Don't stand up or else I'm going to shoot you." Frye pulled out a black 9 millimeter handgun and held it to Royal's chest. Frye continued to accuse Royal of sleeping with Chastain, and Royal continued to deny the allegation. Royal was scared for his life. Frye pulled a silver handgun from his pocket. Frye told Royal "his parents had paid $50,000 in the past and that he had gotten away with about four other murders and he was going to get away with this one too." Frye said he was going to kill his cousin for sleeping with Chastain also. Frye told Royal more than ten times that he was going to kill Royal, and he pointed the gun at Royal more than eight or nine times. Royal pleaded for Frye to leave. Royal was never able to get up from the couch.

By this time the police arrived. Officer Harper had been dispatched to a different location because of a "distraught female." When the officer arrived, Chastain was distraught, crying, and hysterical. The officer had other units dispatched to Royal's

residence to look for Frye, and then the officer took Chastain and drove to the residence. The officer went into the residence, found Frye, and asked him what happened. Frye was cooperative and calm. Frye said he had gone to Royal's residence to discuss Chastain's relationship with Royal. The police found both handguns.

Additional facts will be added as needed.

## DISCUSSION AND DECISION

### Issue 1.

Chastain told Officer Harper that Frye had two handguns on him, a black 9 millimeter handgun and a 25 caliber handgun. Officer Harper had interviewed Chastain at 10th and Euclid Streets, about a mile or so from Royal's residence. The two guns were found during a search of Royal's residence. Chastain later advised the court that if called as a witness at Frye's trial she would take the 5th Amendment. As a result of Chastain not being available as a witness, Officer Harper was recalled and questioned about the two handguns and Chastain telling him about them.

Frye's argument is that Chastain's comments about the handguns were not an excited utterance, but were testimonial in nature. Accordingly, he argues, the statement should not have been admitted into evidence.

The State raises a waiver argument in that there was no contemporaneous objection to Officer Harper's answer to the questions about Chastain's comments about the guns. Frye replies that this case was tried by a commissioner and that the presiding judge had previously ruled that Chastain was not available as a witness. A conference outside the hearing of the jury was held between the commissioner and the attorneys where it was determined that the presiding judge did not intend to disallow other answers made by Chastain if they fit within other exceptions, such as the excited utterance exception to the hearsay rule. Frye contends that objections made at preliminary hearings served as objections at trial.[1] Our reading of the record shows no contemporaneous objection, and our copious reading of those places in the record where the trial court's ruling should have been made also reveals no objection having been made.

The likelihood that this issue is waived is strong, but we choose to address the issue on the merits.

■ Indiana Evidence Rule 803(2) provides that a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition will not be excluded as hearsay. Whether a statement constitutes an excited utterance is essentially a factual issue subject to a clearly erroneous standard of review, sometimes described as the functional equivalent of abuse of discretion. *Hammon v. State*, 829 N.E.2d 444, 449 (Ind. 2005).[2] Officer Harper testified that a

---

1. Indiana Appellate Rule 22 C says that any factual statement shall be supported by a citation to the page where it appears in an Appendix, and if not contained in an Appendix, to the page it appears in the Transcript or exhibits. Frye failed to note in his brief where the objections to which he refers were made.

2. The United States Supreme Court granted certiorari in *Hammon* and handed down an opinion on 19 June 2006. *Hammon v.*

*Indiana*, —— U.S.——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Pertinent to this appeal is the following quotation from that opinion:

> Without attempting to produce an exhaustive classification of all conceivable statements—or even all conceivable statements in response to police interrogation—as either testimonial or nontestimonial, it suffices to decide the present cases to hold as follows: Statements are nontestimonial when made in the course of police interro-

startling event occurred when an armed Frye invaded Royal's residence, that Chastain was distraught, crying, and hysterical, and her statement related to the event, which was occurring or had occurred immediately beforehand. The trial court could properly infer that Chastain's initial reports were made while she was under stress. The evidence was admissible insofar as State law is concerned.

■ Frye argues that the case of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), prevents the admission of certain hearsay evidence if it is testimonial because it violates the confrontation clause of the federal Constitution. A testimonial statement is one given or taken in significant part for purposes of preserving it for potential future use in legal proceedings. *Wallace v. State*, 836 N.E.2d 985, 995 (Ind.Ct.App. 2005). In evaluating whether a statement is for purposes of future legal utility, the motive of the questioner, more than that of the declarant, is determinative, but if either is principally motivated by a desire to preserve the statement it is sufficient to render the statement testimonial. *Hammon*, 829 N.E.2d at 456. The Indiana Supreme Court in *Hammon*, quotes from the Court of Appeals opinion of the same case, *Hammon v. State*, 809 N.E.2d 945, 952 (Ind.Ct.App.2004):

> [T]hat the common denominator underlying the Supreme Court's [the *Crawford* opinion] discussion of what constitutes a testimonial statement is the official and formal quality of such a statement. Accordingly, the court reasoned that the Supreme Court limited its holding in *Crawford* to police interrogation, which carries with it a connotation of an at least slightly adversarial setting. The Court of Appeals held that when police arrive at the scene of an incident in response to a request for assistance and begin informally questioning those nearby immediately thereafter in order to determine what has happened, statements given in response thereto are not testimonial. This conclusion has been cited for the proposition that preliminary questions asked at the scene of a crime shortly after it has occurred do not rise to the level of an 'interrogation.' Such an unstructured interaction between officer and witness bears no resemblance to a formal or informal police inquiry that is required for a police interrogation as that term is used in *Crawford.*

(Internal citations and quotation marks omitted.)

We are of the opinion that the foregoing quote is equally applicable to the fact situation in this appeal and that Chastain's statement to Officer Harper was not testimonial.

■ Frye next contends that the testimony of Royal was "incredibly dubious." Under the incredible dubiosity rule, a court will impinge on the jury's responsibility to judge the credibility of the witness only when it is confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Altes v. State*, 822 N.E.2d 1116, 1122 (Ind.Ct.App.2005). When a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. *Id.* However, we have recognized that the application of this rule is rare and is limited

gation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.

We are of the opinion that the questioned statement in the present case fits within the nontestimonial definition provided by the Supreme Court in *Hammon.*

to cases where the sole witness' testimony is so inherently dubious or inherently improbable that no reasonable person could believe it. *Id.*

Frye's argument in this regard is disingenuous. Frye acknowledges that Chastain's statement about the guns serves as a corroboration of Royal's testimony, thereby defeating the sole witness concept. In addition the guns were found in a search of Royal's residence, thereby providing circumstantial evidence of their existence at the scene of the crime.

■ We also feel it appropriate to observe that there was testimony by Royal that Frye exhibited both guns and that there was evidence that both guns were found in Royal's residence. Any error caused by the admission of evidence is harmless error for which we will not reverse a conviction if the erroneously admitted evidence was cumulative of other evidence appropriately admitted. *Muncy v. State,* 834 N.E.2d 215, 217 (Ind.Ct.App. 2005).

We hold that Frye's state and federal constitutional guarantees were not violated.

### Issue 2.

■ Frye filed a motion in limine based upon Evid. R. 404(b) to exclude evidence of prior crimes, wrongs, or acts. The statement of Frye under scrutiny in this issue is his comment that he had committed several murders in the past and that he was going to kill Royal. The trial court eventually allowed the admission of the statement because it pertained to the intimidation charge.[3] The court gave an admonishment to the jury:

> [E]vidence does not go towards and should not be construed in any way as to

whether or not the defendant's parents have paid any money in the past or whether or not he has committed any murders or whether or not he's gotten away with any murders. The purpose of this evidence is to only show whether or not this individual was in fear.

■ If the trial court properly admonishes the jury, any error is generally deemed cured. *Sanchez v. State,* 794 N.E.2d 488, 490 (Ind.Ct.App.2003).

The trial court also gave a final instruction echoing a similar message.

■ Frye's argument, in part, says that this evidence was admitted prior to the time that Royal was cross-examined about his state of mind. Frye posits that the State's anticipatory countering about Royal's state of mind renders this evidence inadmissible. That was not the objection lodged with the trial court. A defendant may not argue one ground for objection at trial and then raise new grounds on appeal. *Patton v. State,* 837 N.E.2d 576, 579 (Ind.Ct.App.2005).

Frey's objection at trial was based upon prejudice to Frye. Evid. R. 404(b) expressly permits the admission of evidence for such purposes to show motive and intent.

The admission of evidence is a determination left to the sound discretion of the trial court. *Wilhelmus v. State,* 824 N.E.2d 405, 414 (Ind.Ct.App.2005). Frye has not demonstrated that the trial judge abused his discretion.

### Issue 3.

The State filed notice of the aggravating factors they would be presenting for consideration by the trial court in sentencing Frye.[4] The aggravating factors submitted

---

3. Putting a person in fear of retaliation for a prior lawful act is an essential element of an intimidation charge. Ind.Code § 35–45–2–1.

4. Filed pursuant to *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

by the State include Frye's criminal or delinquent activity, the nature and circumstances of the crime committed, Frye's character and a violation of a no contact order as well as the high risk that Frye will commit another crime, and that Frye was in need of correctional and rehabilitative treatment that can be best provided at a penal facility.

During sentencing the trial court referred to two aggravating factors not specifically mentioned in the State's notice. One was that there were two guns used by Frye, and that the place of occurrence was, in fact, Royal's home.

▪ Two reasons weigh heavily against Frye's argument on this issue. One is that he specifically waived a jury that would have considered his *Blakely* rights. The defendant must express his personal desire to waive a jury trial and such personal desire must be apparent from the court's record, whether in the form of a written waiver or a colloquy in open court. *Jones v. State*, 810 N.E.2d 777, 779 (Ind.Ct.App. 2004). After an explanation by the trial judge, Frye expressly, on the record, waived a jury.

The other is that this court has observed that *Blakely* need not be read to require that a defendant be provided notice of every fact upon which the State may rely to seek an enhanced sentence. *Huffman v. State*, 825 N.E.2d 1274, 1276 (Ind.Ct. App.2005).

The trial court did not err in sentencing Frye.

## CONCLUSION

The trial court did not err in admitting hearsay evidence; the trial court did not err in admitting prior bad acts evidence;

and, the trial court properly sentenced Frye.

Judgment affirmed.

SHARPNACK, J., and VAIDIK, J., concur.