Royal AMOS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0803–CR–229.

Court of Appeals of Indiana.

Nov. 25, 2008.

Transfer Denied Jan. 21, 2009.

Ellen M. O'Connor, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joby D. Jerrels, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Royal Amos was convicted after a jury trial of two counts of murder,[1] four counts of attempted murder,[2] each as a Class A felony, one count of burglary[3] as a Class B felony, and one count of carrying a handgun without a license[4] as a Class A misdemeanor, and he was sentenced to an aggregate sentence of 271 years executed. He appeals, raising the following issues:

I. Whether the trial court abused its discretion when it admitted hearsay statements of one of the victims into evidence based on the present sense impression exception;

II. Whether the trial court abused its discretion when it submitted questions to a witness that had been posed by the jury; and

III. Whether sufficient evidence was presented to support Amos's convictions.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On the night of February 1, 2006, Lavonn Dunn spoke with her sister, Keyonia Dunn, on the telephone on a three-way call with Lavonn's boyfriend. At that time, Keyonia lived in an apartment with her two-year-old son, D.T., her friend, Erika Thornton, and Erika's three children, R.T., K.T., and J.T. During the telephone call, Keyonia received a call on her cell phone from Amos, who was the father of her unborn child. Keyonia put Lavonn on hold while she spoke with Amos. After a few minutes, Keyonia returned to her call with Lavonn and, in response to Lavonn's question of who had called, Keyonia stated that it had been Amos. *Tr.* at 142. Lavonn then asked what he had wanted, and Keyonia replied that he wanted some money and had told her that if she did not give him some, he was going to kill her. *Id.* Amos knew that Keyonia received a public assistance check on the first of every month. He would often take her to cash the check, and he would take some of the money. At the end of the telephone call, Keyonia told Lavonn that she would speak with her the next day and that she was not going to let anyone in the apartment. *Id.* at 151.

At approximately 11:00 p.m., R.T., who was ten years old, was woken up by his brothers and realized he was "hurt in the head." *Id.* at 206–07. He saw his mother lying in bed with her eyes closed and unsuccessfully attempted to wake her. K.T., who was nine years old, was awakened by a gunshot and saw a man wearing a ski mask and all black. K.T. was hit in the head with a gun. Five-year-old J.T. was shot in his side. The three boys were all bleeding and ran outside where they encountered a neighbor walking his dog. The neighbor called 911, and an officer from the Indianapolis Police Department arrived shortly thereafter. The responding officer arrived at the scene and ob-

---

1. *See* Ind.Code § 35–42–1–1.

2. *See* Ind.Code §§ 35–42–1–1, 35–41–5–1.

3. *See* Ind.Code § 35–43–2–1.

4. *See* Ind.Code §§ 35–47–2–1, 35–47–2–23.

served the three boys who were bleeding. He proceeded into the apartment and discovered Keyonia and Erika who were both unresponsive. The officer also found two-year-old D.T. in a bedroom doorway. D.T. initially was unresponsive, but started to scream when the officer touched him. All four of the children were transported to hospitals, where it was determined that D.T. had suffered a gunshot wound to the neck, K.T. suffered a gunshot wound to the head, J.T. sustained gunshot wounds, one of which pierced his liver, and R.T. suffered a scalp laceration from either a bullet or blunt force trauma. All of these injuries were life-threatening, but all of the boys survived. Both Keyonia and Erika died as a result of gunshot wounds they received.

In their initial investigation, the police considered Amos and Howard Harris as suspects in the crime. After obtaining search warrants for the men's cell phones, the police were able to track the location of the phones to Bowling Green, Kentucky. On February 2, 2006, Amos and Harris arrived unannounced at the home of Amos's cousin in Bowling Green. The two men stayed about an hour, and Amos asked his cousin if she had heard anything "good or bad" about him. *Id.* at 269. The two men returned later in the evening and stayed for about ten minutes. On the night of the murders, Amos called a friend and told her that he needed to meet and talk. Amos called this friend about twenty-four hours later and told her that he needed to talk. The friend told Amos about news reports indicating that Amos was a person of interest in the murders. Amos said, "I didn't do it," but he could not talk about it on the phone. *Id.* at 363–64. The friend contacted the police and arranged to meet Amos in Bloomington, Indiana. Amos was arrested by the police when he went to the meeting place.

While awaiting trial, Amos was housed in a cellblock with Brian Wynne, who had previously been housed with Harris. Wynne told Amos that he was familiar with Amos's case and asked Amos about it because of his own "morbid curiosity." *Id.* at 515. Amos told Wynne that he and Harris had been at a restaurant on the night of the murders, drinking and using cocaine. Amos told Wynne that he had needed money and knew that his girlfriend had money because it was the first of the month and she had recently received her assistance check. Amos told Wynne that they went to his girlfriend's apartment, kicked the door open, and Amos went to Keyonia's room and demanded money. Keyonia argued with Amos, and he shot her in the head. He then shot D.T. and went into the other bedroom and emptied his gun.

At Amos's jury trial, the trial court allowed two questions posed by jury members to be asked of Wynne over the objection of Amos's counsel. The first question was whether Amos admitted to Wynne that he had shot a female, to which Wynne responded that Amos did admit so. *Id.* at 549. The second question was whether Amos had admitted, "to shooting the children or to just emptying his firearm," to which Wynne responded that Amos had admitted to shooting the children. *Id.* At the conclusion of the trial, the jury found Amos guilty as charged, and he was given an aggregate sentence of 271 years executed. Amos now appeals.

## DISCUSSION AND DECISION

### I. Hearsay Statement

The admission of evidence is within the sound discretion of the trial court. *Cox v. State,* 774 N.E.2d 1025, 1026 (Ind.Ct.App. 2002). We will not reverse the trial court's decision to admit evidence absent an abuse of discretion. *Boney v. State,* 880 N.E.2d

279, 289 (Ind.Ct.App.2008), *trans. denied.* An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Id.*

Amos argues that the trial court abused its discretion when it allowed Lavonn to testify as to what Keyonia told her that Amos said in their cell phone conversation. He contends that the statements were hearsay and should not have been admitted into evidence because they did not fall under the present sense impression exception to the hearsay rule.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Hearsay is generally inadmissible. Evid. R. 802. However, hearsay statements may be admitted into evidence if they qualify as a present sense impression, which is defined as "[a] statement describing or explaining a material event, condition, or transaction, made while the declarant was perceiving the event, condition, or transaction, or immediately thereafter." Evid. R. 803(1).

 In the present case, the State sought to admit Lavonn's testimony regarding what Keyonia told her that Amos said during their cell phone conversation. Because Lavonn's testimony contains hearsay (Amos's statement) within hearsay (Keyonia's statement), each layer of hearsay must qualify under an exception to the hearsay rule before the statement at issue may be admitted into evidence. *Mayberry v. State,* 670 N.E.2d 1262, 1267 (Ind.1996) (citing Evid. R. 805). Amos's statements to Keyonia, the first layer of hearsay, were not hearsay because they were statements by a party-opponent in that they were statements made by Amos and offered against Amos at his trial. A statement qualifies as a statement by a party-oppo-

nent if "the statement is offered against the party and is . . . the party's own statement, in either an individual or representative capacity." Evid. R. 801(d)(2)(A).

 At trial, the trial court allowed Lavonn's testimony as to what Keyonia said, the second layer of hearsay, into evidence under Evidence Rule 803(1), the present sense impression exception to the hearsay rule. This rule requires that the statement describe or explain the event or condition during or immediately after its occurrence, and the statement must be based upon the declarant's perception of the event. *Truax v. State,* 856 N.E.2d 116, 125 (Ind.Ct.App.2006) (citing *Jones v. State,* 780 N.E.2d 373, 376–77 (Ind.2002)).

 Here, the trial court allowed Lavonn to testify to the following statements Keyonia made to her relaying what Amos had said during a cell phone conversation she and Amos had just completed:

> She told us to hold on a minute and she put the phone down, and we was on hold for, like 15 minutes and she picked [the] phone back up, and I, like, who was that? She was, like, [Amos]. And I was, like, what did he want? She said he wanted some money. She said, he said if he [sic] didn't give her [sic] no money that he was gonna kill her.

*Tr.* at 142. In order for this testimony to fall under the present sense impression, three requirements must be met: (1) it must describe or explain an event; (2) during or immediately after its occurrence; and (3) it must be based on the declarant's perception of the event. *Truax,* 856 N.E.2d at 125. The record reveals that the event being described or explained was a cell phone conversation between Keyonia and Amos. A telephone call is certainly an event, and when Keyonia spoke to Lavonn, she was describing and explaining the event of the cell phone

conversation with Amos. The declarant, Keyonia, also perceived the event in that, during the course of a telephone conversation, a person perceives, through listening, the words of the other party. Additionally, Keyonia's statements regarding what Amos had told her during their cell phone conversation were made immediately after she had completed her cell phone call with Amos. She had been talking with Lavonn on her land line when her cell phone rang, and she put Lavonn on hold while she took that cell phone call, which turned out to be Amos. When Keyonia finished the cell phone call with Amos, she immediately returned to her telephone conversation with Lavonn and described what Amos had stated during their conversation. This proximity in time between the event and Keyonia's description of the event satisfies the requirement of the exception. Therefore, the testimony met the requirements of the present sense impression exception to the hearsay rule, and the trial court did not abuse its discretion in admitting it into evidence.[5]

■ Additionally, Amos argues that Lavonn's statements regarding what Keyonia said at the end of their conversation did not qualify as a present sense impression. In response to the State's question of how the conversation ended, Lavonn testified,

"She told me she loved me. She wasn't letting nobody in [sic]. She'd talk to me tomorrow." *Tr.* at 151. Amos contends that this statement was prejudicial because it supported the burglary charge as it allowed an inference that, because Keyonia stated she was not going to let anyone into her apartment, anyone who was later present must have entered by force. Assuming without deciding that this statement was erroneously admitted, we conclude that its admission was harmless error in that it was merely cumulative of the other evidence showing that a forced entry occurred. "[A]n error is harmless if the probable impact of the evidence upon the jury is sufficiently minor so as not to affect a party's substantial rights." *Turner v. State,* 878 N.E.2d 286, 294 (Ind.Ct.App. 2007), *trans. denied* (2008). Wynne testified that Amos had told him that he and Harris kicked the door open to enter Keyonia's apartment, and the physical evidence showed that the front door of the apartment had been opened by force. The trial court did not abuse its discretion in admitting this statement.

## II. Jury Questions

■ Whether to submit a juror's question to a witness is within the discretion of the trial court. *Lemond v. State,*

---

5. Amos also seems to argue that the admission of Keyonia's statements to Lavonn presented a Confrontation Clause issue. The Confrontation Clause of the Sixth Amendment of the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." *Crawford v. Washington,* 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Under *Crawford,* "the admission of a hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment if (1) the statement was testimonial and (2) the declarant is unavailable and the defendant lacked a prior opportunity for cross-examination." *Howard v. State,* 853 N.E.2d 461, 465 (Ind.

2006). "A testimonial statement is one given or taken in significant part for purposes of preserving it for potential future use in legal proceedings." *Frye v. State,* 850 N.E.2d 951, 955 (Ind.Ct.App.2006), *trans. denied.* In determining whether a statement is for purposes of future legal utility, "the motive of the questioner, more than that of the declarant, is determinative," but if either is primarily motivated by a desire to preserve the statement, this is sufficient to render the statement testimonial. *Id.* Here, Keyonia's statements to Lavonn were not testimonial as there was no evidence that they were made for purposes of future legal use; Lavonn was merely a concerned sister inquiring as to why Amos had called Keyonia.

878 N.E.2d 384, 390 (Ind.Ct.App.2007), *trans. denied* (2008). We will therefore review the trial court's decision for an abuse of discretion. *Id.* Indiana Evidence Rule 614(d) governs juror questions and provides:

> A juror may be permitted to propound questions to a witness by submitting them in writing to the judge, who will decide whether to submit the questions to the witness for answer, subject to the objections of the parties, which may be made at the time or at the next available opportunity when the jury is not present. Once the court has ruled upon the appropriateness of the written questions, it must then rule upon the objections, if any, of the parties prior to submission of the questions to the witness.

A proper juror question is one that allows the jury to understand the facts and discover the truth. *Trotter v. State,* 733 N.E.2d 527, 530 (Ind.Ct.App.2000), *trans. denied* (2001). "The determination of whether a question is offered for a proper purpose necessarily requires an examination of the substance of the question." *Id.*

Amos argues that the trial court abused its discretion when it allowed two juror questions to be submitted to Wynne for clarification of his testimony. He contends the questions were not proper because they allowed the jury to inquire about issues, which had come out on direct examination, but which Amos had chosen not to pursue on cross-examination. He claims, therefore, that the questions allowed inquiry beyond the scope of his cross-examination and went beyond clarification.

Here, after both the State and Amos had completed their questioning of Wynne, the trial court inquired as to whether the jury had any questions for the witness. The jury posed two questions, and after hearing Amos's objections, the trial court overruled them and submitted the ques-

tions to Wynne. The questions were whether Amos admitted that: (1) he shot a female; and (2) he shot children or just emptied his firearm. *Tr.* at 549. In determining that these questions were proper, the trial court stated that the juror's questions were "worth clarification" and that "jurors are entitled to ask questions on direct examination testimony." *Id.* at 548. The trial court also stated that, "I think that the reason that we have juror questions is to help clear up points that they may not have gotten both on direct and cross-exam." *Id.* at 549. We agree. The two juror questions helped to clarify Wynne's direct testimony. On direct, Wynne testified that Amos shot his girlfriend in the head, shot the child that was in bed with her, and then went into the other bedroom and emptied his gun. *Id.* at 518. The juror questions clarified that Amos admitted he had shot a female victim and had shot children when he emptied his gun. The questions were therefore proper because they allowed the jury to understand the facts and discover the truth. *See Trotter,* 733 N.E.2d at 530. The trial court did not abuse its discretion when it submitted the juror questions to Wynne.

### III. Sufficient Evidence

Our standard of review for sufficiency claims is well settled. We do not reweigh the evidence or judge the credibility of the witnesses. *Williams v. State,* 873 N.E.2d 144, 147 (Ind.Ct.App.2007). We will consider only the evidence most favorable to the judgment together with the reasonable inferences to be drawn therefrom. *Id.; Robinson v. State,* 835 N.E.2d 518, 523 (Ind.Ct.App.2005). We will affirm the conviction if sufficient probative evidence exists from which the fact finder could find the defendant guilty beyond a reasonable doubt. *Williams,* 873 N.E.2d at 147; *Robinson,* 835 N.E.2d at 523. A conviction may be based purely on circumstantial evi-

dence. *Hayes v. State,* 876 N.E.2d 373, 375 (Ind.Ct.App.2007), *trans. denied* (2008) (citing *Moore v. State,* 652 N.E.2d 53, 55 (Ind.1995)). On appeal, the circumstantial evidence is not required to overcome every reasonable hypothesis of innocence; "[i]t is enough if an inference reasonably tending to support the conviction can be drawn from the circumstantial evidence." *Id.*

Amos argues that insufficient evidence was presented to support his convictions. He contends that he was never identified as the shooter of the two women and the children and that Wynne was not a credible witness. He also claims that there was insufficient evidence presented to support his attempted murder convictions because no evidence established that he intended to kill the children. He likewise alleges that insufficient evidence supported his burglary conviction because no evidence was presented to show the intent to commit a felony.

■ As to his first contention, evidence was presented that identified Amos as the shooter because Wynne testified that Amos had admitted to him that Amos shot both women and the children. Amos next claims that Wynne was not a credible witness because he received a reduced sentence in exchange for testifying against Amos. This is merely a request to assess the credibility of the witness, which we will not do on appeal. *Williams,* 873 N.E.2d at 147.

■ To convict Amos of attempted murder, the State was required to prove beyond a reasonable doubt that he, acting with the specific intent to kill, engaged in conduct that constitutes a substantial step toward the commission of murder. Ind. Code §§ 35–42–1–1; 35–41–5–1. Amos argues that it is unclear from the evidence whether the children were intentionally shot or, if due to their proximity to their mothers, they were accidentally shot. In-

tent to kill may be inferred from the nature of the attack and the circumstances surrounding the crime as well as from the use of a deadly weapon in a manner likely to cause death or great bodily harm. *Kiefer v. State,* 761 N.E.2d 802, 805 (Ind.2002). All four of the children suffered life-threatening injuries as a result of being shot by Amos. Additionally, Wynne testified that Amos admitted to him that he had shot D.T., who was in bed with Keyonia, and then shot the other children when he emptied his gun. This evidence was sufficient for the jury to infer that Amos acted with the intent to kill the four children and to support his four convictions for attempted murder.

■ To convict Amos of burglary as a Class B felony, the State was required to prove beyond a reasonable doubt that he entered Keyonia's apartment while armed with a deadly weapon with the intent to commit the felony of robbery. Ind.Code § 35–43–2–1(1). "A person who knowingly or intentionally takes property from another person or from the presence of another person by using or threatening the use of force on any person or by putting any person in fear" commits robbery. Ind. Code § 35–42–5–1. Here, the evidence presented at Amos's trial showed that he knew that Keyonia received her assistance check on the first of every month. On the evening of February 1, 2006, Amos called Keyonia and told her that he wanted some money and if she did not give him any, he was going to kill her. Amos told Wynne that, on that night, he and Harris needed money and were going to get money from Keyonia because she had received her assistance check that day. Amos told Wynne that he and Harris went to Keyonia's apartment, armed with a gun, and after kicking open the door, he had an argument with her about giving him money, which resulted in Keyonia being shot.

The evidence presented was sufficient to establish that Amos entered Keyonia's apartment, while armed with a deadly weapon, with the intent to commit robbery and to support his conviction for burglary as a Class B felony.

Affirmed.

VAIDIK, J., concurs.

CRONE, J., concurs in result with separate opinion.

CRONE, Judge, concurring in result as to issue I.

I respectfully disagree with my colleagues' decision to address the merits of Amos's evidentiary claim in issue I. Amos failed to object to Lavonn's testimony regarding Keyonia's statement that Amos threatened to kill her if she did not give him money. Tr. at 142. "Failure to make a timely objection results in waiver of the alleged error." *Mitchell v. State*, 690 N.E.2d 1200, 1205 (Ind.Ct.App.1998), *trans. denied*. I would hold that Amos waived the alleged error and therefore concur in result as to issue I. I concur in full with the remainder of the majority's opinion.