**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 23 2014, 9:02 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PETER D. TODD**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GABINA HERNANDEZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1403-CR-78 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Charles C. Wicks, Judge
Cause No. 20D05-1304-CM-499

**October 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

On March 26, 2013, Constance Bellman was working as a loss prevention officer at the J.C. Penney store located in the Concord Mall in Elkhart. On this date, Bellman observed Appellant-Defendant Gabina Hernandez take certain items from the J.C. Penny store without paying for them. On March 28, 2013, Appellee-Plaintiff the State of Indiana (the "State") charged Hernandez with Class A misdemeanor conversion and Class A misdemeanor contributing to the delinquency of a minor. The case proceeded to a jury trial on January 23, 2014. At the conclusion of trial, the jury found Hernandez guilty as charged.

On appeal, Hernandez contends that the trial court abused its discretion in admitting certain evidence. Hernandez also appears to challenge the jury's determination that Bellman was a credible witness. Upon review, we conclude that the trial court acted within its discretion in admitting the challenged evidence. We also conclude that decisions regarding witness credibility are to be made by the trier of fact, and we will not disturb such decisions on appeal. Accordingly, we affirm the judgment of the trial court.

**FACTS AND PROCEDURAL HISTORY**

On March 26, 2013, Bellman was working as a loss prevention officer at the J.C. Penney store located in the Concord Mall in Elkhart. While walking the floor in the women's department, Bellman observed Hernandez shopping with her three children, one girl and two boys. Hernandez was pushing a stroller "that is rented at the center of the mall" which has an area for children to sit in front and a black mesh bag in back. Tr. p. 55. While watching Hernandez, Bellman saw Hernandez place certain items in the black mesh bag.

2

Hernandez placed numerous items under a pile of coats, and placed others on top of the coats. Bellman watched as Hernandez and her daughter, C.C., entered a fitting room. Hernandez's sons "were running around the area" while Hernandez was in the fitting room with C.C. Tr. p. 65. Hernandez and C.C. were in the fitting room for twenty to twenty-five minutes.

After Hernandez and C.C. exited the fitting room, the youngest boy got into the stroller and the older boy "started pushing him." Tr. p. 67. Bellman observed Hernandez speaking to the boys in Spanish and pointing in the direction of the mall entrance to the store. The boys took the stroller to the mall entrance and exited the store. Hernandez and C.C. then went to a service area to pay for some merchandise. Bellman approached the boys and asked them to come back inside the store to wait for their mother. Bellman contacted Eric Flint, a store manager, who took the boys and the stroller to Bellman's office. Bellman then approached Hernandez and C.C., told them that she was a loss prevention officer, and asked them to come to her office to talk. Hernandez and C.C. agreed.

C.C., who was eight years old at the time, translated while Bellman, who did not speak Spanish, attempted to communicate with Hernandez, who did not speak English very well. Through C.C., Bellman asked Hernandez whether she had taken any merchandise from J.C. Penney without paying. Hernandez, through C.C., indicated that she had not. Bellman, again through C.C., told Hernandez what she had seen and asked Hernandez if she could pick up the coats. Bellman observed Hernandez sit up in the chair and put her hand on the stroller. Hernandez did not remove the coats. Bellman then requested permission from Hernandez to

3

remove the coats.

After receiving Hernandez's permission, Bellman removed the coats. Bellman found a shopping bag from another store under the coats. In this shopping bag, Bellman found some of the items that she had observed Hernandez place in the mesh bag on the back of the stroller. Hernandez did not pay for these items, which included a woman's top, a pair of woman's jeans, a pair of girl's sweatpants, and a pack of boy's socks. After finding these items, Bellman questioned Hernandez about two other items, another woman's shirt and another pack of boy's socks. Bellman eventually discovered that Hernandez was wearing the shirt, which still had a J.C. Penney tag attached. Bellman also found the additional package of boy's socks in the "toe" of the stroller. Tr. p. 84.

After Bellman discovered the items that Hernandez had taken from the store without paying for, J.C. Penney employee Maritza Chavez was brought in to help translate. Chavez spoke with Hernandez in Spanish. During this conversation, Hernandez indicated that she understood "what was going on" and the nature of Bellman's questions, as they were translated first by C.C. and then by Chavez. Tr. p. 118. At some point, Hernandez admitted that she had taken the items in question without paying for them. Chavez also discussed a set of forms with Hernandez. The forms included a written acknowledgement, which was subsequently signed by Bellman, Chavez, and Hernandez, indicating that Hernandez had taken the items in question from the J.C. Penney store without paying for them.

On March 28, 2013, the State charged Hernandez with Class A misdemeanor conversion and Class A misdemeanor contributing to the delinquency of a minor. The case

proceeded to a jury trial on January 23, 2014. At the conclusion of trial, the jury found

Hernandez guilty as charged. The trial court subsequently sentenced Hernandez to an

aggregate 360-day sentence, with all 360 days suspended to probation.

## DISCUSSION AND DECISION

### I. Whether the Trial Court Abused Its Discretion In Admitting Inadmissible Hearsay

Hernandez contends that the trial court abused its discretion in admitting certain

evidence at trial.

> The admission or exclusion of evidence is entrusted to the discretion of the trial court. *Farris v. State*, 818 N.E.2d 63, 67 (Ind. Ct. App. 2004). We will reverse a trial court's decision only for an abuse of discretion. *Id*. We will consider the conflicting evidence most favorable to the trial court's ruling and any uncontested evidence favorable to the defendant. *Taylor v. State*, 891 N.E.2d 155, 158 (Ind. Ct. App. 2008). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law. *Id*. In determining whether an error in the introduction of evidence affected an appellant's substantial rights, we assess the probable impact of the evidence on the jury. *Oldham v. State*, 779 N.E.2d 1162, 1170 (Ind. Ct. App. 2002). Admission of evidence is harmless and is not grounds for reversal where the evidence is merely cumulative of other evidence admitted. *Pavey v. State*, 764 N.E.2d 692, 703 (Ind. Ct. App. 2002).

*Collins v. State*, 966 N.E.2d 96, 104 (Ind. Ct. App. 2012). In arguing that the trial court

abused its discretion in admitting inadmissible hearsay at trial, Hernandez claims that

Bellman's testimony relating to certain statements which were made by Hernandez in

Spanish and translated to English by C.C. constituted inadmissible hearsay. Hernandez also

claims that Bellman's testimony relating to her observation of Hernandez constituted

inadmissible hearsay.

"Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." *Palacios v. State*, 926 N.E.2d 1026, 1030 (Ind. Ct. App. 2010) (citing Ind. Evidence Rule 801(c)). "Hearsay is inadmissible unless admitted pursuant to a recognized exception." *Id*. (citing Evid. R. 802). Where, as is the case here, the challenged testimony contains hearsay (Hernandez's statements) within hearsay (C.C.'s statements), each layer of hearsay must qualify under an exception to the hearsay rule before the statement at issue may be admitted into evidence. *Amos v. State*, 896 N.E.2d 1163, 1168 (Ind. Ct. App. 2008) (citing *Mayberry v. State*, 670 N.E.2d 1262, 1267 (Ind. 1996)); *see also* Evid. R. 805.

### A. Hernandez's Statements and C.C.'s Translation

The record demonstrates that when Bellman first approached Hernandez, who admittedly spoke little English, Bellman directed her questions to Hernandez's daughter, C.C., who translated the questions to Spanish, asked Hernandez the questions, and translated Hernandez's answers to English for Bellman. Bellman testified at trial regarding her interaction with Hernandez and C.C., including certain statements made by Hernandez and communicated to Bellman through C.C.'s translation. Specifically, Bellman testified as follows:

> Q:   What was your conversation with the defendant -- with Gabina Hernandez?
> A:   My first thing was, again, I asked her if she had any merchandise that belongs to J.C. Penney's that she did not pay for.
> Q:   What was her response?
>                                    ****
> Q:   What did the -- what did Gabina Hernandez indicate to you through her daughter?

6

A: The little girl, I had -- again forgive me saying this, but I did ask, "Do you have any merchandise [that] belongs to J.C. Penney's that you did not pay for?" And I quickly told the little girl, "Do you have any clothes that you did not pay for?" And she came back, and she paused. She didn't say anything for a little bit. And the little girl said no. And --

Q: Let me stop you right there. Did the mother say anything to the little girl before she said no?

A: She said something, and then the little girl said no.

**\*\*\*\***

Q: After the little girl indicated that her mother indicate no to not having any merchandise in the stroller, what did you do?

A: I told her what I had seen her with.

Q: Were you speaking to the mother or the daughter?

A: At that time, the daughter.

Q: And what did the daughter do?

A: Talked to the mother.

Tr. pp. 76-78, 82. Hernandez claims that both her statements and those made by C.C. in translating her statements constitute inadmissible hearsay.

*1. Hernandez's Statements*

Although hearsay is generally inadmissible, "Indiana Evidence Rule 801(d)(2)(A) provides that a statement is not hearsay if '[t]he statement is offered against a party and is [ ] the party's own statement, in either an individual or representative capacity ....'" *Johnson v. State*, 832 N.E.2d 985, 999 (Ind. Ct. App. 2005). "This exception is known as the 'statement by party-opponent.'" *Id*. (citing Evid. R. 801(d)(2)(A)). In *Amos*, a witness testified to the defendant's statements as they were relayed to him by another individual. 896 N.E.2d at 1168. Upon review, we concluded that the defendant's statements were not hearsay because they were statements by a party-opponent in that they were statements made by the defendant and offered against him at trial. *Id*. Similarly, we conclude that Hernandez's statements to

7

C.C., the first layer of hearsay, were not hearsay because they were statements by a party-opponent in that they were statements made by Hernandez and offered against Hernandez at her trial. As such, we further conclude that the trial court did not abuse its discretion in admitting Bellman's testimony relating to Hernandez's statements.

### 2. C.C.'s Translation of Hernandez's Statements

Although hearsay is generally inadmissible, "hearsay statements may be admitted into evidence if they qualify as a present sense impression, which is defined as '[a] statement describing or explaining a material event, condition, or transaction, made while the declarant was perceiving the event, condition, or transaction, or immediately thereafter.'" *Id*. (citing Evid. R. 803(1)). "This rule requires that the statement describe or explain the event or condition during or immediately after its occurrence, and the statement must be based upon the declarant's perception of the event. *Palacios*, 926 N.E.2d at 1032 (citing *Amos*, 896 N.E.2d at 1168); *see also Truax v. State*, 856 N.E.2d 116, 125 (Ind. Ct. App. 2006). In order for C.C.'s testimony to fall under the present sense impression, three requirements must be met: (1) it must describe or explain an event; (2) during or immediately after its occurrence; and (3) it must be based on the declarant's perception of the event. *Palacios*, 926 N.E.2d at 1032 (citing *Amos*, 896 N.E.2d at 1168); *see also Truax*, 856 N.E.2d at 125.

In *Palacios*, the daughter of a victim of domestic abuse who did not speak "very good English" translated questions and answers between the victim and the investigating law enforcement officer. 926 N.E.2d at 1032. At trial, the law enforcement officer testified to the daughter's statements. *Id*. Upon review, we noted that the daughter's statements "were

contemporaneous translations of the statements made by [the victim]." *Id*. "There was little possibility that [the daughter's] memory would render her translations inaccurate and the circumstances of [the] case provided little opportunity for fabrication." *Id*. We concluded that the daughter's translations "providing contemporaneous descriptions of the statements made by [the victim] constituted present sense impressions." *Id*. at 1032-33 (citing *U.S. v. Kramer*, 741 F.Supp. 893, 896 (S.D. Fla. 1990) (holding that a translation was admissible as a present sense impression); *U.S. v. Abell*, 586 F.Supp. 1414, 1425 (D. Me. 1984) (concluding that a translation is exempted from the hearsay rule as a present sense impression); John A. Bourdeau, J.D., WHEN IS HEARSAY STATEMENT "PRESENT SENSE IMPRESSION" ADMISSIBLE UNDER RULE 803(1) OF FEDERAL RULES OF EVIDENCE, 165 A.L.R. Fed. 491 (2000) (observing that a translation by a translator has been held to be admissible as a present sense impression)).

Similar to the daughter's statements in *Palacios*, here, C.C.'s statements were contemporaneous translations of the statements made by Hernandez. Further, also similar to the victim's daughter in *Palacios*, because C.C.'s translation was completed immediately after Hernandez made each of the original statements, there was little possibility that C.C.'s memory would render her translations inaccurate. Hernandez fails to point to anything in the record that would suggest that C.C. was provided with an opportunity or had any incentive to fabricate her translations. Furthermore, Bellman testified that she believed that C.C. understood her questions because C.C. responded "right away." Tr. p. 80. Based on the record, we conclude that C.C.'s translations providing contemporaneous descriptions of the

9

statements made by Hernandez were not inadmissible hearsay because the translations constituted present sense impressions.  As such, we conclude that the trial court did not abuse its discretion in admitting Bellman's testimony relating to C.C.'s translations of Hernandez's statements at trial.

### B.  Whether Bellman's Testimony Regarding Her Observation of Hernandez's Actions Constituted Inadmissible Hearsay

Hernandez also contends that the trial court abused its discretion in admitting Bellman's testimony regarding her observation of Hernandez into evidence.  Specifically, Hernandez claims that Bellman's testimony regarding her observation of Hernandez constituted inadmissible hearsay.  For its part, the State argues that Bellman's testimony regarding her observation of Hernandez was not inadmissible hearsay because Hernandez's conduct did not qualify as a statement.  The State further argues that Bellman's testimony was admissible as it was based on her personal knowledge of the matter.

Again, hearsay is "a statement that: (1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted." Evid. R. 801(c).  A statement is "a person's oral assertion, written assertion, or nonverbal conduct if the person intended it as an assertion." Evid. R. 801(a).  "To be an assertion, the statement must allege a fact susceptible of being true or false." *Pritchard v. State*, 810 N.E.2d 758, 760 (Ind. Ct. App. 2004) (citing *Vertner v. State*, 793 N.E.2d 1148, 1151 (Ind. Ct. App. 2003)).  "A witness may testify to what he observed as long as it is based on his personal knowledge of the matter." *Steen v. State*, 987 N.E.2d 159, 162-63 (Ind. Ct. App.

10

2013) (citing Evid. R. 602), *trans. denied*; *see also Pritchard*, 810 N.E.2d at 760 (providing

that witnesses clan clearly testify to things that are within their personal knowledge).

At trial, Bellman testified as follows:

Q:    After the little girl indicated that her mother indicated no to not having any merchandise in the stroller, what did you do?
A:    I told her what I had seen her with.
                                **\*\*\*\***
Q:    What did you do next?
A:    Then I asked her if maybe the merchandise -- I told her what I had seen, that I had seen her pick up coats and put the merchandise in, and I asked her if she could pick up the coats.
Q:    You asked the little girl this?
A:    And the little girl asked the mother.
Q:    What happened after the little girl asked the mother?
A:    The mother sat up in the chair, and she put her hand on the stroller.  I thought she was going to pick up the coats, and she didn't.

Tr. pp. 82-83.  Upon review, we conclude that Hernandez's nonverbal conduct was not a

statement as the record is devoid of any suggestion that the conduct was intended as an

assertion.  However, even if Hernandez's nonverbal conduct could be classified as a

statement, Bellman's testimony regarding her observation of Hernandez was admissible as it

was based upon Bellman's observation and personal knowledge of the matter.  *See Steen*, 987

N.E.2d at 162-63 (providing that a witness may testify to what he observed as long as it is

based on his personal knowledge of the matter, and because the witness was testifying to his

personal knowledge of what he saw on the clothing, the H & M security tags and store labels,

his testimony was proper and not inadmissible hearsay); *Pritchard*, 810 N.E.2d at 760

(providing that the testimony of the witnesses was a recounting of what they saw in a

recording; for purposes of admissibility of their testimony, such a recounting was no different

11

than if they had been standing on the cell block observing the incident; and they can clearly testify to things that are within their personal knowledge). As such, the trial court did not abuse its discretion in allowing Bellman to testify regarding her observation of Hernandez.

**C. Whether the Admission of the Challenged Testimony was Harmless**

Even assuming that any of the above-discussed challenged evidence might have constituted inadmissible hearsay, any error in admitting the challenged evidence was harmless. Error in admitting evidence at trial is harmless "if the 'reviewing court is satisfied that the conviction is supported by substantial independent evidence of guilt so that there is no substantial likelihood that the challenged evidence contributed to the conviction.'" *Konopasek v. State*, 946 N.E.2d 23, 30 (Ind. 2011) (quoting *Meadows v. State*, 785 N.E.2d 1112, 1122 (Ind. Ct. App. 2003)). The record in the instant matter contains evidence of Hernandez's guilt in addition to the challenged evidence. Both Bellman and Chavez testified that Hernandez admitted that she took the items in question from the store without paying for them. Chavez spoke with Hernandez in Spanish and testified that Hernandez indicated that she understood "what was going on" and the nature of Bellman's questions, as they were translated first by C.C. and then by Chavez. Tr. p. 118. In addition, State's Exhibit 6, which was admitted into evidence, was a written acknowledgement, signed by Bellman, Chavez, and Hernandez, indicating that Hernandez admitted that she had taken the items in question from J.C. Penney without paying for them. In light of Chavez's testimony and Hernandez's written acknowledgement of guilt signed by Hernandez, we conclude that any potential error in admitting the challenged evidence was harmless.

12

## II. Questions Regarding Bellman's Credibility

Hernandez also appears to challenge the jury's determination that Bellman was a credible witness, stating in her appellate brief that the record demonstrates that Bellman is a liar. However, to the extent that Hernandez challenges the jury's determination regarding Bellman's credibility on appeal, we note that determinations regarding witness credibility are to be made by the finder of fact, *i.e.*, the jury, and we will not disturb such determinations on appeal. *See Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007) (providing that "[i]t is the fact-finder's role, not that of appellate courts, to assess witness credibility"). As such, Hernandez's apparent challenge to the jury's determination that Bellman was a credible witness cannot succeed.

## CONCLUSION

In sum, we conclude that (1) the trial court did not abuse its discretion in admitting Bellman's testimony regarding either Hernandez's statements or C.C.'s translation of Hernandez's statements, and (2) that Bellman's testimony regarding her observation of Hernandez's actions did not constitute inadmissible hearsay. We also conclude that even if any of the challenged testimony would have constituted inadmissible hearsay, the admission of this evidence would be harmless in light of Hernandez's admission of guilt. Furthermore, we will not disturb the jury's determination that Bellman was a credible witness.

The judgment of the trial court is affirmed.

BARNES, J., and BROWN, J., concur.

13