## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 07 2015, 8:03 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Charles W. Lahey<br>South Bend, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Angela N. Sanchez<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lamar Allen Colley,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | August 7, 2015<br><br>Court of Appeals Case No.<br>71A05-1501-CR-40<br><br>Appeal from the St. Joseph Superior Court<br><br>Cause No. 71D03-1206-FD-532<br><br>The Honorable Jerome Frese, Judge |

**Friedlander, Judge.**

[1] Lamar Colley was convicted of Strangulation (Count I)[1] and Criminal Confinement (Count II),[2] both class D felonies. Colley appeals his convictions and presents the following restated issues for our review:

1. Did the trial court err in admitting two hearsay statements?
2. Did the trial judge fail to remain impartial by actively intervening on the State's behalf?

[2] We affirm.

[3] The following are the facts most favorable to the convictions. Colley and Michelle Garrett dated and lived together for several months. Problems developed in the relationship, including pending domestic battery charges, which caused Garrett to move out in March of 2012. On April 27, 2012, Garrett and Colley reconciled and went out for drinks before returning to Colley's house.

[4] At the house, Colley wanted to know if Garrett had decided to drop the impending battery charges against him. When she expressed uncertainty and

---

[1] Ind. Code Ann. § 35-42-2-9 (West, Westlaw 2013) in effect at the time this offense was committed classified as a class D felony this statute has since been revised and in its current form reclassifies this as a Level 6 felony. *See* I.C. 35-42-2-9 (West, Westlaw current with all 2015 First Regular Session of the 119th General Assembly legislation). The new classification, however, applies only to offenses committed on or after July 1, 2014. *See id.* Because this offense was committed before then, it retains the former classification.

[2] I.C. § 35-42-3-3 (West, Westlaw 2013) in effect at the time this offense was committed classified as a class D felony this statute has since been revised and in its current form reclassifies this as a Level 6 felony. *See* I.C. 35-42-3-3 (West, Westlaw current with all 2015 First Regular Session of the 119th General Assembly legislation). The new classification, however, applies only to offenses committed on or after July 1, 2014. *See id.* Because this offense was committed before then, it retains the former classification.

requested that he let her leave, Colley became angry. Colley cursed at Garrett, told her she could not leave, slapped her, and grabbed her by her neck with both hands. When Garrett told Colley again that she wanted to leave, he took her phone and hid it. He then removed his shirt and twisted it around Garrett's neck until she could not breathe. Colley told Garrett to say goodbye to her children and grandchildren because she would never see them again. Colley stopped choking Garrett when she became unconscious. At some point Garrett regained consciousness, Colley then grabbed her hair, and dragged her from the kitchen to the bedroom. In the bedroom Colley again started choking her with his hands as she tried to force him off her.

[5] After several hours, Colley became distracted; Garrett grabbed her car keys and fled the house. At around 5:00 a.m., on April 28, 2012, Garrett entered a 7/11 store and asked the store clerk, Todd Mead, to call the police. Mead noticed that Garrett was not wearing shoes and had red marks around her neck. Garrett told Mead that her boyfriend had choked her. Frightened that someone may have followed Garrett, Mead positioned himself in front of the door and called the police. Mead relayed questions from the 911 operator to Garrett, and then repeated Garrett's responses to the 911 operator. Within two minutes of the dispatch, Officer Jeremy Tyler arrived at the 7/11. Garrett, while crying, told him that she was repeatedly strangled and held against her will by Colley at his house.

[6]    Colley was ultimately charged with strangulation and criminal confinement and a bench trial ensued. At trial, the following exchanged occurred during Mead's direct examination:

> [Prosecutor]: State moves to admit States Exhibit 13[3] and publish to the Court.
>
> [Defense]: Judge, I'm going to object. I think its hearsay.
>
> [The Court]: Well, sure it is if it's purporting to be repetition of what a third party said, but I'm not sure that disposes of the question. Do you have some exception?
>
> [Prosecution]: I think Mr. Mead clearly described that the victim—
>
> [The Court]: Do you have a two word exception?
>
> [Prosecution]: Exited utterance to hearsay.
>
> [The Court]: Thank you. Overruled. Excited utterance.

*Transcript* at 88. During Mead's direct examination, the defense made several more objections on hearsay grounds; the trial court overruled each objection.

[7]    Next, the State called Officer Tyler to the stand and asked him to tell the court what Garrett had told him when he arrived at the 7/11. Anticipating an objection on hearsay grounds, the court interjected and explained the testimony was admissible under the excited utterance exception.

---

[3] Exhibit 13 is the recording of Mead's conversation with the 911 operator.

[The Court]: And your objection is hearsay, and my ruling is its excited utterance. Because it appears to me by inference that her trip to the 7-Eleven didn't consume much time at all, maybe a couple minutes. The dispatch went out over the air—I mean over the wire to the dispatcher pretty quickly. He got the dispatch pretty quickly. He got the dispatch over the airwaves and responded immediately and said he was there within two minutes, so I find it's fresh in terms of time for the excited utterance exception. There hasn't been time to calm down.

*Id.* at 104. The trial concluded on December 11, 2012, and Colley was found guilty as charged.

1.

Colley contends the trial court improperly applied the excited utterance exception to the rule against hearsay on two occasions. First, the trial court admitted into evidence a recording of a conversation between Mead and the 911 operator. In this recording, Mead relayed questions to Garrett and repeated her responses to the 911 operator. Second, the trial court admitted the police officer's testimony concerning what Garrett told him under the excited utterance exception to the rule against hearsay.

A trial court has broad discretion to admit or exclude evidence. *Blount v. State*, 22 N.E.3d 559 (Ind. 2014). We will not reverse such a decision unless it is clearly contrary to the logic and effect of the facts and circumstances of the case or misinterprets the law. *VanPatten v. State*, 986 N.E.2d 255 (Ind. 2013).

A hearsay statement is one "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Hearsay statements are not admissible, except pursuant to certain exceptions within the Rules of Evidence. Evid. R. 802. For a hearsay statement to be admitted as an excited utterance under Evid R. 803(c), the following elements must be shown: (1) A startling event occurred; (2) a statement was made by a declarant while under the stress of excitement caused by the event; and (3) the statement related to the event. *McQuay v. State*, 10 N.E.3d 593 (Ind. Ct. App. 2014). This test is not "mechanical" and admissibility turns "on whether the statement was inherently reliable because the witness was under the stress of the event and unlikely to make deliberate falsifications." *Teague v. State*, 978 N.E.2d 1183, 1187 (Ind. Ct. App. 2012).

Colley argues the 911 recording constitutes double hearsay and therefore its admission, over a timely objection, was an abuse of discretion. "If a statement involves hearsay within hearsay, also known as multiple hearsay or double hearsay, the statement may still be admitted if "each layer of hearsay" qualifies "under an exception to the hearsay rule[.]'" *Id.* During the 911 call, Mead relayed the operator's questions to Garrett and then repeated Garrett's response to the operator. The court admitted the 911 recording into evidence without an explanation of what exceptions to the rule against hearsay applied to each "layer" of the recording. We conclude that the first "layer" of the recording, Garrett's statements to Mead, are admissible under the excited utterance

exception to the rule against hearsay. Additionally, the second "layer" of the recording, Mead's statements to the 911 operator, are admissible under the present sense impression exception to the rule against hearsay.

[12] Hearsay statements may be admitted into evidence if they qualify as present sense impression, which is defined as "[a] statement describing or explaining a material event, condition or transaction, made while the declarant was perceiving the event, condition or transaction or immediately thereafter." Evid. R. 803(1). "This rule requires that the statement describe or explain the event or condition during or immediately after its occurrence, and the statement must be based upon the declarant's perception of the event." *Palacios v. State*, 926 N.E.2d 1026, 1032 (Ind. Ct. App. 2010).

[13] In *Amos v. State*, 896 N.E.2d 1163 (Ind. Ct. App. 2008), the appellant contended the court abused its discretion by admitting statements from a telephone conversation. The appellant argued that the present sense impression exception was not applicable. *Id*. The court explained that the proximity in time between the incident and the statements from the telephone conversation, which described the event, satisfied the requirement for the present sense impression exception. *Id*. This court held the repetition of statements immediately after hearing them was admissible under the present sense impression exception. *Id*.

[14] For the same reason, we conclude that each layer of the recording was admissible under recognized hearsay exceptions. Garrett's statements to the store clerk were admissible under the excited utterance exception and Mead's

statements to the 911 operator were admissible under the present sense impression exception. The immediacy of the clerk's repetition provided no opportunity for him to fabricate.

[15] Colley also contends the court erred admitting Officer Tyler's testimony pursuant to the excited utterance exception. According to Colley, the excited utterance exception is not applicable to Officer Tyler's testimony because his statements were unreliable. He argues the statements were made at a time separate from the incident and made for the single purpose of police investigation and therefore lack reliability.

[16] The excited utterance exception applies to statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by an event or condition." *Palacios v. State,* 926 N.E.2d at 1031. The declarant's statements are deemed reliable where the circumstances suggest that the declarant is incapable of thoughtful reflection or deceit due to the excitement of the startling event. *Palacios v. State,* 926 N.E.2d. 1026.

[17] In *Noojin v. State,* 730 N.E.2d 672, 676 (Ind. 2000), our Supreme Court held that "[t]he amount of time that has passed between the event and the statement is relevant but not dispositive" with respect to the applicability of the excited utterance exception. Officer Tyler arrived at the convenience store within two minutes after he was dispatched. Garrett was still crying and breathing heavily as she relayed her story to Officer Tyler. Garrett's statements to Officer Tyler therefore qualified as excited utterances. We conclude Officer Tyler's

testimony and the 911 recording are both admissible under recognized hearsay exceptions.

[18] Nevertheless, even if the 911 recording and Officer Tyler's testimony were inadmissible hearsay; the admission of that evidence was harmless. Errors regarding the admission of evidence—including double hearsay—are harmless unless they affect the substantial rights of a party. *Davis v. Garrett*, 887 N.E.2d 942 (Ind. Ct. App. 2008). "Reversible error cannot be predicated upon a trial court's erroneous admission of evidence that is merely cumulative of other evidence that has already been properly admitted." *Id.* at 947.

[19] Officer Tyler's testimony and the 911 recording are merely cumulative of the trial testimonies of Garrett and Mead. The admission of Officer Tyler's testimony and the 911 recording did not affect Colley's substantial rights, and therefore reversal is not warranted.

2.

[20] Colley contends the trial court judge failed to remain impartial because he assisted the State in overcoming an objection made by the defense. "A criminal defendant has a right to a fair trial before an impartial judge." *Fox v. State*, 997 N.E.2d 384, 390 (Ind. Ct. App. 2013). When the impartiality of the trial judge is challenged on appeal, we will presume the judge is unbiased and unprejudiced. *Smith v. State*, 770 N.E.2d 818 (Ind. 2002). To rebut that presumption, the defendant "must establish from the judge's conduct actual bias or prejudice that places the defendant in jeopardy." *Id.* at 823.

[21] To assess whether the judge has crossed the barrier of impartiality, the court will examine both the judge's actions and demeanor. *Timberlake v. State*, 690 N.E.2d. 243 (Ind. 1997). A trial judge has the authority to make impartial statements about the general admissibility of evidence. *Fox v. State,* 997 N.E.2d. 384.

[22] During trial, the defense objected to the admission of *Exhibit 13*, which contained Mead's recorded conversation with the 911 operator. The objection was on hearsay grounds and the trial judge agreed that the recording was in fact hearsay. When the prosecutor did not answer the objection with an exception, the trial judge asked, "Do you have a two word exception?" to which the prosecutor responded, "[e]xcited utterance exception to hearsay." *Transcript* at 88. The trial judge overruled the defense's objection and the 911 recording was admitted into evidence.

[23] Colley argues that the trial court's question to the State was asked for the sole purpose of overcoming an objection, which illustrated actual bias in favor of the State, and placed the defendant in jeopardy. This court has held that "[a]n adverse ruling alone is insufficient to show bias or prejudice." *Massey v. State*, 803 N.E.2d 1133, 1139 (Ind. Ct. App. 2004).

[24] Colley's argument that the judge assisted the prosecution in overcoming an objection, which in effect allowed the admission of *Exhibit 13,* is insufficient to prove that the trial judge failed to remain impartial. Colley received a full and

fair opportunity to litigate in front of an impartial judge. After reviewing the record, we find insufficient support for Colley's claim of bias.

[25] Judgment affirmed.

Baker, J., and Najam, J., concur.